*07M-1082-JGD*

## AFFIDAVIT OF JOHN A. MERCER, JR.

I, John A. Mercer, Jr., being duly sworn, do state that:

1.    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").   I have been an ATF Special Agent for approximately sixteen years, and during that time I have been involved in numerous investigations of violations of federal firearm and controlled substance laws. Currently, I am assigned to a group in the Boston Field Division of ATF that, in part, works with other federal, state, and local police departments in and around the City of Boston to investigate and prosecute violations of the federal firearm, explosive, and controlled substance laws.

2.    Based on my training and experience as an ATF Special Agent, I know that it is a violation of 18 U.S.C. §922(g)(1) for any person who has been convicted of a felony to possess any firearm in or affecting commerce, or to receive any firearm which has been shipped or transported in interstate or foreign commerce.

3.    I have been involved in an investigation of the activities of Robert H. BRADY, whose date of birth is --/--/78, and whose social security number is XXX-XX-9879 ("BRADY").   The

1

facts contained herein are based on my own personal investigation and from discussions I have had with other law enforcement officers.  In submitting this affidavit, I have not included each and every fact known to me about this investigation.  Rather, I am only recounting evidence sufficient to establish the requisite probable cause.

4.   On November 29, 2007, an ATF Confidential Informant (the "CI") introduced ATF Task Force Officer George Karelas, acting in an undercover capacity ("TFO Karelas"), to BRADY in the parking lot of Walgreen's Pharmacy, in Chelsea, Massachusetts.  Prior to the meeting, I advised the CI to tell BRADY that TFO Karelas was an associate of his, they served time in state prison together, and that TFO Karelas ran "security" for a group of Dominican cocaine traffickers in Lynn, Massachusetts.  I also advised the CI to tell BRADY that TFO Karelas planned to set up an armed robbery of the Dominican cocaine traffickers which could result in the theft of several kilograms of cocaine and/or thousands of dollars in cash.

5.   The meeting between TFO Karelas, the CI, and BRADY was video and audio recorded via surveillance equipment contained in TFO Karelas' undercover vehicle.  During the meeting, TFO Karelas

described his association with the above mentioned Dominican cocaine traffickers and his plan to rob them.  BRADY agreed to assist in the armed robbery, supply firearms for the robbery, and recruit an associate of his from Charlestown, Massachusetts, who "just did fifteen years in the feds."

6.  On December 6, 2007, I along with other law enforcement officers met with the CI at a prearranged location.  The CI told me that he had accompanied BRADY to BRADY's parents residence in Medford, Massachusetts, the previous day, and observed BRADY retrieve a chrome .380 caliber pistol from the basement.  After interviewing the CI, I searched the CI's person and provided the CI with an ATF undercover vehicle that was equipped with audio and video surveillance equipment.  There were no firearms in the undercover vehicle when it was provided to the CI.   At my direction, the CI called BRADY and made arrangements to pick BRADY up at his parent's residence in Medford.  The CI advised BRADY that they were going to meet with TFO Karelas and then rob the Dominican cocaine traffickers.   Prior to leaving the prearranged location, the CI made arrangements to pick up BRADY and his associate and to meet TFO Karelas in the rear parking lot of the Home Depot, 1100, Revere Beach Parkway, in Chelsea, for

the purpose of discussing the final plan to rob the Dominican cocaine traffickers, before continuing to Lynn to commit the robbery.

8.   When the CI left the prearranged location in the undercover vehicle, I along with other law enforcement officers, maintained constant surveillance of the CI and observed the CI pick up BRADY and his associate in Medford.   BRADY sat in the front passenger seat, and his associated in the rear.   The surveillance team later observed the associate exit the vehicle at another location in Medford, after which the vehicle, with the CI still driving, and continued directly to the Home Depot parking lot.   TFO Karelas met with the CI and BRADY at that location to discuss the armed robbery and then directed them to follow him to Lynn for the robbery.   He spoke to them through the open driver's side window.   After TFO Karelas walked away from the vehicle, an ATF arrest team placed the CI and BRADY in custody.   A Lorcin, Model L380, .380 caliber pistol, serial number 171738, was recovered from under the front passenger seat of the undercover vehicle where BRADY had been seated.   The pistol is consistent in appearance with the firearm the CI

4

earlier reported seeing in BRADY's parent's home the previous day.

6.   I have reviewed BRADY's criminal record as maintained by the Massachusetts Criminal History Systems Board.   Based on that review, I learned that a sentence was imposed on BRADY on April 21, 1998, in the United States District Court for the District of Massachusetts, Criminal No. 97-10239-WGY, reflecting his conviction for criminal contempt of court, in violation of 18 U.S.C. §401(3).   I know from my training and experience that this offense carries a maximum term of imprisonment exceeding one year, and is a felony under federal firearms law.   In fact, BRADY was sentenced to serve 87 months in federal prison on his contempt conviction.

7.   Based on my investigation I was able to determine that the Lorcin, Model L380, .380 caliber pistol, serial number 171738, was manufactured outside Massachusetts, and had therefore traveled in interstate commerce.

8.   Based on the above, I believe probable cause exists to conclude that on December 6, 2007, in Chelsea, within the District of Massachusetts, Robert H. BRADY, after having been convicted of a felony offense, did knowingly possess a firearm in

and affecting commerce, to wit: a Lorcin, Model L380, .380 caliber pistol, serial number 171738, in violation of 18 U.S.C. §922(g)(1).

JOHN A. MERCER, JR.
Bureau of Alcohol, Tobacco, Firearms, and Explosives


Sworn and subscribed to before me this 7th day of December 2007.

JUDITH G. DEIN
United States Magistrate Judge

6